PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

LLOYD FARNHAM (CABN 202231)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Lloyd.Farnham @ usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>KEVIN ORLANDO ERAZO-CRUZ,<br><br>    Defendant. | CASE NO. 3:25-CR-00101 RFL<br><br>UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING<br><br>Date:  May 1, 2025<br>Time:  2:00 p.m.<br>Court:  Hon. Rita F. Lin |

## I.    INTRODUCTION

The United States and the defendant, Kevin Orlando Erazo-Cruz, jointly request that the Court accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (the Tenderloin) through a combination of enforcement and expedited dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited criminal history, leading the United States to seek expedited prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that immediately

excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking. For the reasons set forth below, the United States and the defendant believe that a below-Guidelines sentence—time served plus one day in this expedited prosecution—and a geographical restriction meet the statutory requirements of Section 3553(a).

## II.     MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable. This will achieve the expedited proceeding contemplated by both parties. The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record." Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1), U.S.S.G. §6A1.1, Crim. Local Rule 32-1(b). The government respectfully submits that the record here—the publicly-filed Criminal Complaint, the Plea Agreement, and the parties' sentencing memoranda, all detailing the defendant's offense conduct and other factors relevant under § 3553—enable the Court to meaningfully exercise its sentencing authority under § 3553 and proceed to sentencing without the need for a presentence investigation report. The parties request that the Court explain its findings and the sufficiency of the record at time of sentence.

## III.    APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range:

a.  Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(11):                              18[1]
    At least 40 KG but less than 60 KG of Converted Drug Weight

b.  Acceptance of Responsibility, U.S.S.G. §3E1.1:                                    - 3

c.  Adjusted Offense Level:                                                                        15

The government has reviewed and produced in discovery a criminal history report reflecting that the defendant has two prior convictions relevant to his Criminal History Category. He has a prior

---

[1] The Base Offense Level was calculated by the government based on drugs recovered from items dropped by defendant as he ran from officers prior to his arrest: 13.1 grams of fentanyl, 9.9 grams of methamphetamine, and 0.2 grams of cocaine base. This results in a "converted drug weight" of 53.26 kg, and an offense level of 18.

federal conviction, for illegal entry into the United States in violation of 8 U.S.C. § 1325.  On January 30, 2020, in the District of Arizona, he was sentenced to two days in prison (one criminal history point) and later removed to Honduras.  He was also convicted, in San Francisco Superior Court, of one count of Cal. Penal Code § 11352(a), transportation and sale of a controlled substance, and on August 30, 2024 was sentenced to 261 days in custody (two criminal history points).  As part of the state conviction, Erazo-Cruz was under the supervision of the San Francisco Adult Probation Department for two years, ending August 30, 2026, and therefore the pending crime was committed while under a criminal justice sentence (two criminal history points).  The state sentence also included an order to stay away from the Tenderloin.  Based on this criminal history, the defendant has five criminal history points.

An Adjusted Offense Level of 15, with Criminal History Category III, results in a Guidelines range of 33 to 41 months.

The government also seeks a three-year term of supervised release as required by statute and imposition of the $100 mandatory special assessment.

## IV.     SENTENCING RECOMMENDATION

Consistent with the proposed plea agreement in this case, the parties jointly request a sentence of time served plus one day and a three-year term of supervised release that includes a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release.  This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from where the defendant's conviction for drug trafficking arises.

### A.     Section 3553(a) Factors

1. *Nature and circumstances of the offense and history and characteristics of the defendant*

The defendant is a 27-year old male from Honduras.  According to the Department of Homeland Security, the defendant lacks immigration status and/or is removable under U.S. immigration law.  There is an immigration detainer in place such that the parties expect the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following his release from the custody of the U.S. Marshals.  The defendant has one prior conviction for illegal entry into the United States, and a prior state drug conviction that resulted in a time served sentence.  He has no convictions

(or arrests according to his criminal history records) involving any violence, or anything that reflects conduct beyond street-level drug dealing.

Around 10:24 pm on November 7, 2024, an undercover officer with the San Francisco Police Department approached the defendant on the 600 block of Ellis Street, in San Francisco's Tenderloin neighborhood.  The undercover officer negotiated the purchase of cocaine base from Erazo-Cruz, and the undercover officer handed Erazo-Cruz $15 in marked funds in exchange for a rock of cocaine base.

Once the drug transaction was complete, the undercover officer signaled to the arrest team and provided a physical description of the defendant and his clothing.  As arresting officers drove up and approached Erazo-Cruz, he started running.  Officers pursued Erazo-Cruz and he ran east on Ellis Street, north on Hyde Street, and then east on O'Farrell Street.  As Erazo-Cruz reached the area near 601 O'Farrell Street, officers saw him throw two bags of suspected narcotics into a parking lot behind a closed fence.  When officers later retrieved the bags from the parking lot, which contained suspected fentanyl and suspected methamphetamine.  The defendant was taken into custody on O'Farrell Street west of Leavenworth Street, and officers found he had the marked funds used by the undercover officer to purchase cocaine base and $250 in cash.

In the Plea Agreement the defendant admits that the substances he possessed fentanyl, methamphetamine, and cocaine base before fleeing and discarding the bags with drugs.  The defendant also admits he intended to distribute fentanyl to another person, and that in total he possessed 94.2 grams of a mixture and substance containing fentanyl, 9.9 grams of a mixture and substance containing methamphetamine, and 8.0 grams of cocaine base.

He also admits to possessing fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and acknowledges that a conviction in this case "makes it practically inevitable and a virtual certainty that [he] will be removed or deported from the United States."  Plea Agreement, ¶ 1.

> 2. ***Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant***

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis.  As the Court is aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and

methamphetamine has exacted a crushing human toll in the Tenderloin.  The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself.  The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

Because he has accepted responsibility, and possessed only a relatively small amount of drugs, the adjusted Guidelines range for the defendant's conduct is 18 to 24 months.  The defendant has minimal criminal history, and no prior convictions for drug distribution or criminal arrests or convictions involving violence.  The proposed sentence—of time served plus one day and a three-year term of supervised release with a geographic restriction precluding him from the Tenderloin—is a downward variance from the Guidelines range but one that the government submits is appropriate given the defendant's conduct and criminal history, the unique problems the Tenderloin faces, and the need for deterrence and protection of the public.

The defendant did not contest detention and has been in custody since his transfer to federal custody on April 15, 2025.  Prior to being brought to federal custody, he was also in custody in San Francisco County Jail on state drug charges for the same conduct he is charged with in this case.  The government offered to resolve the case on the terms contained in the proposed plea agreement, and the defendant agreed to waive indictment, plead guilty, and proceed to sentencing; the defendant also agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin.  The defendant is on notice that a return to the Tenderloin (in violation of the defendant's supervised release terms) will invite new charges or supervised release violations.

This disposition results in a drug trafficking conviction within weeks of arrest (not months or years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from returning to the Tenderloin.  The speed at which this case moved and was resolved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

**B.**      **The necessity of the proposed supervised release special conditions**

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this

disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to effect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this particular case, under the § 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of § 3553(a).

//
//
//
//
//
//
//

## V. CONCLUSION

For these reasons, the government recommends that the Court sentence the defendant to a sentence of time served plus one day, to be followed by a term of supervised release of three years and the special conditions agreed to by the parties in the Plea Agreement, including the stay-away condition.

DATED: April 24, 2025                                   Respectfully Submitted,

                                                        PATRICK D. ROBBINS
                                                        Acting United States Attorney


                                                         /s/
                                                        LLOYD FARNHAM
                                                        Assistant United States Attorney